IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 22CR00140 |
| | ) | |
| KEVIN DIXON | ) | |
| | ) | |

**MOTION TO DISMISS**

Kevin Dixon, by and through his attorney, Bedi & Singer, LLP, respectfully requests this Honorable Court dismiss the charges against Mr. Dixon pursuant to the Second Amendment of the United States Constitution and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). In support of this Motion, Mr. Dixon states as follows:

**I. FACTS**

On March 15, 2022, the Government filed an indictment against Mr. Dixon, charging him as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of an automatic firearm in violation of 18 U.S.C. § 922(o)(1). *See* Dkt 1. Mr. Dixon moves to dismiss the charges against him because the Second Amendment to the United States Constitution protects his right to possess a firearm. Thus, the charges are unconstitutional as applied to Mr. Dixon.

**II. ARGUMENT**

The charges against Mr. Dixon must be dismissed because they violate the Second Amendment of the United States Constitution. The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's recent decision in *Bruen* set out "the standard for applying the Second Amendment." *See Bruen*, 142 S. Ct. at 2129–30. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. In other words, it is the Government's burden to show the law is consistent with a robust history of such regulations. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*.

In setting forth this new standard, the Supreme Court again rejected the use of the means-end scrutiny test. *Id*. at 2129; *see also Heller*, 554 U.S. at 634; *McDonald v. City of Chicago*, 561 U.S. 742, 924 (2010). The Court explained that the means-end scrutiny standard allows "judges to assess the costs and benefits of firearms restrictions" on a "case-by-case basis" to determine "whether the right is *really worth* insisting upon." *Bruen*, 142 S. Ct. at 2129 (emphasis in original). The Court concluded: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Id*. (quoting *Heller*).

Applying this new standard, the Second Amendment's plain text covers the conduct proscribed by sections 922(g)(1) and 922(o)(1). Consequently, the Constitution presumptively protects such conduct. *Id*. at 2129-30. The Government cannot meet its burden of establishing that its application of these sections are consistent with the Nation's historical tradition of firearm regulation. *Id*. Sections 922(g)(1) and 922(o)(1) therefore unconstitutional as applied to Mr. Dixon.

### A. The Second Amendment's plain text covers the possession of firearms by Mr. Dixon.

The Second Amendment's plain text covers the conduct proscribed by §§ 922(g)(1) and 922(o)(1). As noted above, the Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Supreme Court has repeatedly held that "the people" protected under the Second Amendment include "all Americans." *See Bruen*, 142 S. Ct. at 2156 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms"); *Heller*, 554 U.S. at 581 ("[T]he Second Amendment right is exercised individually and belongs to all Americans."); *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) ("'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."); *see also* U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause).

The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583. Thus, the Second Amendment's plain text covers the possession of firearms by all Americans, including Mr. Dixon. Accordingly, such conduct is presumptively lawful.

Section 922(g)(1) criminalizes this presumptively lawful conduct. Section 922(g)(1) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The statute clearly prohibits certain convicted persons from possessing firearms. Because a person does not lose their status as an American simply by conviction, § 922(g)(1) criminalizes presumptively lawful conduct. Consequently, the Government must show § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.

Similarly, § 922(o)(1) criminalizes presumptively lawful conduct. Section 922(g)(1) provides, subject to some exceptions, that it is "unlawful for any person to transfer or possess a machinegun." *See* 18 U.S.C. § 922(o)(1). Because the plain text of the Second Amendment does not exclude certain firearms from protection, § 922(o)(1) criminalizes presumptively lawful conduct. Consequently, the Government must show § 922(o)(1) is consistent with the Nation's historical tradition of firearm regulation.

  **B. The Government cannot show that § 922(g)(1) and § 922(g)(1) are consistent with the Nation's historical tradition of firearm regulation as applied to Mr. Dixon.**

The Government cannot meet its burden of establishing that § 922(g)(1), as applied to Mr. Dixon, is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. As the Supreme Court explained in *Bruen*, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. In other words, to meet its burden, the Government must establish § 922(g)(1) is based on a historical "tradition"—a robust record of specific, accepted, and enduring restrictions on the Second Amendment right. *Id*. at 2156.

Conversely, it is not enough to show that § 922(g)(1) "addresses a general societal problem that has persisted since the 18th century," such as dangerousness or immorality. *Id*. at 2131. "[T]he lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if

earlier generations addressed the societal problem but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id*.

Further, the Supreme Court held that "when it comes to interpreting the Constitution, not all history is created equal." *Id*. at 2136. The Court warned that judges must "guard against giving postenactment history more weight than it can rightly bear." *Id*. Historical evidence from the late nineteenth and twentieth centuries "do[] not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154 & n.28; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

The Government has conceded that § 922(g)(1) "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27–28, *United States v. Pettengill,* No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)). The Government has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011); *see also United States v. Quiroz,* No. PE:22-CR-00104-DC, 2022 WL 4352482, at *5 (W.D. Tex. Sept. 19, 2022) (finding § 922(n) is unconstitutional after the Government argued that § 922(n)'s history is analogous to § 922(g)(1)'s history).

Although the majority of the Seventh Circuit has not decided whether citizens with felony convictions were historically outside the scope of the Second Amendment's protection, then-Judge Barrett determined that "[f]ounding-era legislatures did not strip felons of the right to

5

bear arms simply because of their status as felons." *See Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019), abrogated by *Bruen*, 142 S. Ct. 2111.

Other circuits have similarly found that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196, abrogated by *Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have not found evidence of longstanding dispossession laws.").

Accordingly, the Government cannot meet its burden of establishing that its application of § 922(g)(1) to Mr. Dixon is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.

Similarly, the Government must show that its application of § 922(o)(1) to Mr. Dixon is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Undoubtedly, the burden is on the Government to compile the historical record and prove that there is a robust historical tradition prohibiting the type of weapon allegedly possessed by Mr. Dixon. If the Government cannot meet its burden, the Court must dismiss the charge against Mr. Dixon because in our adversarial system courts decide cases "based on the historical record compiled by the parties." *See Bruen*, 142 S. Ct. at 2130 n.6 (quotation marks omitted).

**C.  *Bruen*'s holding must govern over *Heller*'s dictum relating to § 922(g)(1).**

6

Finally, *Bruen*'s holding must prevail over *Heller*'s dictum. The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when it stated—without citation—that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626–27 & n.26. The Seventh Circuit has described this language in *Heller* as dictum. *See United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010). In fact, the Seventh Circuit held that "the [*Heller*] Court never actually addressed the historical pedigree of felon dispossession laws. Accordingly, we have refused to read too much into the Court's 'precautionary language.'" *See Kanter*, 919 F.3d at 445, abrogated by *Bruen*, 142 S. Ct. 2111.

*Bruen* "did not attempt to bolster [the] reasoning"—or lack thereof— underlying *Heller*'s dictum. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126. Moreover, *Bruen* now requires the Government "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. "Only if" the Government meets its burden may a court uphold a regulation as constitutional. *Id*.

The *Heller* Court itself warned that "[i]t is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued." *See Heller*, 554 U.S. at 625 n. 25. Accordingly, *Bruen*'s holding must prevail over *Heller*'s footnote-consigned dictum.

### III. CONCLUSION

Under *Bruen*'s "standard for applying the Second Amendment," the plain text covers Mr. Dixon's possession of a firearm. The Government cannot meet its burden of demonstrating that its application of section 922(g)(1) and 922(o)(1) are "consistent with the Nation's historical

tradition of firearm regulation." These sections thus are unconstitutional as applied to Mr. Dixon. Mr. Dixon respectfully asks this Court to grant his Motion to Dismiss.

        Respectfully submitted,

        s/ Jonathan S. Bedi
        Jonathan S. Bedi
        Bedi & Singer, LLP
        53 West Jackson Blvd
        Chicago, IL 60604
        Phone: (312) 525-2017
        jbedi@bedisinger.com
        **Attorney for Defendant**

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that the foregoing document was filed via the Court's ECF system.

s/Jonathan S. Bedi
Attorney for Defendant
