IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 22CR00140 |
| | ) | |
| KEVIN DIXON | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL MOTION SEEKING DISMISSAL OF COUNT 2 OF THE INDICTMENT**

Kevin Dixon, by and through his attorney, Bedi & Singer, LLP, respectfully supplements his motion to dismiss the indictment with intervening case law. In light of these legal developments, Mr. Dixon asks this Court to dismiss Count 2 of the indictment.

**I. FACTS**

On March 15, 2022, the government filed an indictment against Mr. Dixon, charging him in Count 2 as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* Dkt 1. On June 23, 2022, the United States Supreme Court issued its opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

On December 1, 2022, Mr. Dixon moved to dismiss the charges against him pursuant to the Second Amendment of the United States Constitution and *Bruen*. Dkt 56. Specifically, Mr. Dixon argued that § 922(g)(1) was unconstitutional as-applied to him. *Id*. On December 23, 2022, the government filed a response to Mr. Dixon's motion, which relied heavily on *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022). Dkt 61.

On January 12, 2023, Mr. Dixon filed his reply, highlighting that the Third Circuit's decision in *Range* was vacated and scheduled for a rehearing *en banc*. Dkt 64. The same day, the government also notified the Court that *Range*'s decision was vacated but urged the Court to still follow its reasoning. Dkt 65 at 1-2.

1

On March 23, 2023, the Court denied Mr. Dixon's motion to dismiss. Dkt 76. The Court found that the plain language of the Second Amendment does not cover Mr. Dixon's conduct, and even if it did, the government proved there was a history and tradition of disarming "violent felons" like Mr. Dixon. *Id*.

On June 7, 2023, the Third Circuit became the first federal appellate court to hold that § 922(g)(1) was unconstitutional in an as-applied challenge. *Range v. Garland*, 69 F.4th 96, 98 (3d Cir. 2023). Shortly thereafter, a district court in the Southern District of Mississippi granted a defendant's motion to dismiss, similarly finding § 922(g)(1) was unconstitutional as-applied to the defendant. *See United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *24 (S.D. Miss. June 28, 2023); *see also United States v. Leblanc*, No. CR 23-00045-BAJ-RLB, 2023 WL 8756694, at *1 (M.D. La. Dec. 19, 2023) (finding § 922(g)(1) unconstitutional as-applied to the defendant); *United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) (finding § 922(g)(1) unconstitutional as-applied to the defendant).

On June 20, 2023, the Seventh Circuit issued its opinion in *Atkinson v. Garland*, No. 22-1557, where it held that the government's historical analysis of the constitutionality of § 922(g)(1) fell "well short of *Bruen*'s demands." *Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542, at *3 (7th Cir. June 20, 2023). While *Atkinson* ultimately remanded the case for further briefing, the decision established that the government has so far failed to "affirmatively prov[e] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at *5 (quoting *Bruen*, 142 S. Ct. at 2127).

Based on those significant legal developments, district courts in the Seventh Circuit have found § 922(g)(1) unconstitutional in both facial and as-applied challenges. *See United States v. Prince*, 22-CR-240, Dkt 73 (N.D. Ill. Nov. 2, 2023) (finding 922(g)(1) unconstitutional

as-applied to the defendant and on its face); *United States v. Griffin*, 21-CR-00693, Dkt 85 at 10 (N.D. Ill. Nov. 30, 2023) (finding § 922(g)(1) unconstitutional as-applied to the defendant); *United States v. Taylor*, 23-CR-40001, Dkt 44 (S.D. Ill. Jan. 22, 2024) (finding 922(g)(1) unconstitutional as-applied to the defendant and on its face).

There is no doubt the case law in this area is developing at breakneck speed, resulting in splits of opinions among the circuits and district courts. The Seventh Circuit has not definitively weighed in on the issue, but *Range*, *Atkinson*, and subsequent decisions in *Bullock*, *Prince*, and *Griffin* show Count 2 of Mr. Dixon's indictment should be dismissed.

Mr. Dixon thus supplements his motion to dismiss the indictment under *Bruen* and asks the Court to find the government failed to prove § 922(g)(1) is constitutional on its face and as-applied to him. Such a holding is required to prevent an injustice in Mr. Dixon's case.

II. **ARGUMENT**

The Court should dismiss the indictment against Mr. Dixon because the government has failed to carry its burden and "affirmatively prove that its firearms regulation is part of the historical tradition." *Bruen*, 142 S. Ct. at 2126. In *Atkinson*, the Seventh Circuit was presented with a record developed before the *Bruen* opinion was issued. *Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542 (7th Cir. June 20, 2023). In remanding the case for further briefing, the Seventh Circuit acknowledged that "the government's brief before us includes some historical analysis," but stated that the record was "nothing close to what would satisfy the demanding standard set forth in *Bruen*." *Atkinson* at *3. The government's briefing provided the district court with "some Founding era commentary," and explained that felons were "historically subject to execution and estate forfeiture, as well as the loss of other civic rights." *Id.* Given the

3

Seventh Circuit's guidance in *Atkinson*, the government's evidence in Mr. Dixon's case too "falls well short of *Bruen's* demands."

### A. The government has conceded that § 922(g)(1) "addresses a general societal problem that has persisted since the 18th century," so it must cite "distinctly similar historical regulations"

In Mr. Dixon's case, the government argued that between the two avenues of historical inquiry proposed in *Bruen*, it needed to only provide historical analogies that were "relevantly similar" to § 922(g)(1). Dkt 61 at 14, 15, 23; *see also United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *9 (M.D. Pa. Aug. 22, 2023) ("Although the Government does not expressly state that it views Section 922(g)(1) as a regulation intended to address a societal problem that was 'unimaginable at the founding,' it implicitly takes this position by arguing on the basis of historical analogs that are, in the Government's view, relevantly similar. This is the methodology that is applicable to a challenged regulation addressing a modern problem.") (internal citations omitted).

The government has since conceded that § 922(g)(1) "addresses a general societal problem that has persisted since the 18th century." *See United States v. David Johnson*, 21-CR-108, Dkt 124 at 30 (N. D. Ill. Aug. 16, 2023). Consequently, the government must cite a "distinctly similar historical regulation" to § 922(g)(1) to satisfy *Bruen*'s demands. *Bruen*, 142 S. Ct. at 2129.

This concession alone should be enough for the Court to find the government has failed to meet its burden under *Bruen*. In Mr. Dixon's case, the government failed to present any distinctly similar historical regulations.

4

### B. The Third Circuit found in *Range* that the defendant was among "the people" and § 922(g)(1) was unconstitutional as-applied to him

In Mr. Dixon's case, the government heavily relied on *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), which was vacated and reheard *en banc*. Dkts 61, 65. After rehearing, the Third Circuit found in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) that § 922(g)(1) was unconstitutional as-applied to the defendant.

In coming to this conclusion, the Third Circuit first found that the defendant was among "the people" protected by the Second Amendment, despite his felony conviction. The Court of Appeals reached this conclusion for four reasons, none of which were specific to the defendant's criminal history.

First, the Third Circuit noted that because the criminal histories of the plaintiffs in *Heller*, *McDonald*, and *Bruen* were not at issue, the Supreme Court's references to "law-abiding, responsible citizens" were dicta that should not be construed too broadly. *Id*. at 101. This conclusion is consistent with the Seventh Circuit's decision in *United States v. Meza-Rodriguez* that the Supreme Court's "passing references" to law-abiding citizens should not be given much weight. 798 F.3d 664, 669 (7th Cir. 2015); *see also United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022) ("Contrary to the government's argument, *Bruen*'s characterization of petitioners as 'law-abiding citizens' does not control this Court's interpretation of 'the people' covered by the Second Amendment").

Second, the Third Circuit observed that the First and Fourth Amendments also reference "the people," and the meaning of the phrase should not vary across provisions. *Id*. at 101–02.

Third, the court agreed with the statement in *Binderup* and the logic of then-Judge Barrett in her dissenting opinion in *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019), that persons with Second Amendment rights may nonetheless be denied possession of a firearm.

Finally, the Third Circuit noted that the phrase "law-abiding, responsible citizens" is too expansive and vague to constitute a workable standard and would, in any event, give far too much authority to legislatures to decide whom to exclude from "the people." *Id*. at 102–03.

After finding the defendant was among "the people" protected by the Second Amendment, the Third Circuit next addressed whether "the Government ha[d] justified applying Section 922(g)(1) to Range 'by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Id*. (quoting *Bruen*, 142 S. Ct. at 2130.). The Third Circuit addressed five discrete arguments presented by the government — the same arguments presented in Mr. Dixon's case — but found that none satisfied its burden under *Bruen*. *Id*. at 103–6.

The Third Circuit also considered whether "dangerousness" should be the touchstone for the "historical tradition" analysis. *Range*, 69 F.4th at 104 n. 9. The government argued against this approach, asserting that "10 of the 15 judges in *Binderup* and the Court in *Holloway* and *Folajtar* rejected dangerousness or violence as the touchstone." *Id*. Ultimately, the Third Circuit found that it would not resolve the "dangerousness" dispute because "the Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not." *Id*.

This Court found the government had met its burden in Mr. Dixon's case because "dangerous felons" are not among "the people," Dkt 76 at 7-9, and there is a historical tradition of disarming dangerous individuals. *Id*. at 10. With this supplemental authority and inconsistency from the government, the Court should dismiss Count 2 of Mr. Dixon's indictment.

### C. District courts have found that the government failed to "affirmatively prove" a longstanding history and tradition of disarming "dangerous" felons

As mentioned above, in denying Mr. Dixon's motion to dismiss, this Court found that the government's evidence showed a history and tradition of disarming "dangerous" felons like Mr. Dixon. *Id*. However, district courts have since rejected the evidence relied on by this Court.

For example, the district court in *United States v. Bullock* was asked to determine whether § 922(g)(1) was unconstitutional as-applied to a defendant who had prior convictions for aggravated assault and manslaughter. No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *24 (S.D. Miss. June 28, 2023). In that case, the district court surveyed the *Bruen* landscape, finding some courts failed to engage with Second Amendment scholarship altogether and instead relied on the dicta of *McDonald* and *Heller* alone. Of the courts who engaged with the scholarship, the district court found five articles were relied upon.

First, the *Bullock* court noted the five articles had significant credibility issues. Next, the *Bullock* court cited this Court's reliance on two of those articles to deny Mr. Dixon's motion to dismiss. The district court explained: "The problem is that these articles can be cherry-picked in the exact opposite direction—to support granting a defendant's motion to dismiss." *Id*. at *24. The district court went on to explain the pitfalls of each article used by this Court. The *Bullock* court also noted that, not long ago, the government advanced the position that "early American history did not support felon disarmament." *Id*. at *28. Ultimately, the *Bullock* court found § 922(g)(1) was constitutional as-applied to the defendant. The *Bullock* court analysis is significant here because it shows the government's evidence does not "affirmatively prove" its firearm regulation, and the defendant's criminal history in *Bullock* is similar to Mr. Dixon's.

Shortly after *Bullock*'s decision, the district court in *United States v. Quailes* also determined the government failed to carry its burden and found § 922(g)(1) unconstitutional

as-applied to the defendant. No. 1:21-CR-0176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023). The defendant in that case had four prior felony convictions for drug possession with intent to distribute heroin and cocaine. *Id*. at *1. *Id*. at *30. In *Quailes*, the government argued that "[b]arring the possession of firearms by persons who have been convicted of a drug-trafficking offense is 'part of the historical tradition.'" The district court found: "The Government's conclusion rests on dangerousness as the historical 'touchstone' without any explanation of how the earlier regulations compare in mechanics or purpose to Section 922(g)(1). This comparison is too broad and does not carry the Government's burden under the *Bruen*/*Range* standard."

Like in *Range*, the *Quailes*'s court reasoned that dangerousness is too broad to meet the government's burden under *Bruen*. This Court should similarly find that the government failed to "affirmatively prove" its firearm regulation is part of the nation's history and tradition, and disarming individuals under "dangerousness" is too broad under *Bruen*.

### D. District courts in the Seventh Circuit have found that § 922(g)(1) is unconstitutional on its face and as-applied to the defendant

While this Court upheld § 922(g)(1) "as constitutional after *Bruen*, [its decision] predate[s] *Atkinson*." *See United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924, at *6 (N.D. Ill. Oct. 3, 2023) (citing Mr. Dixon's case). With *Atkison*'s guidance, multiple courts in the Seventh Circuit have found that § 922(g)(1) is both unconstitutional on its face and as-applied to the defendant.

For example, on November 2, 2023, the district court in *United States v. Prince* was the first court to find § 922(g)(1) was unconstitutional on its face. No. 22 CR 240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023). In that case, Judge Gettleman found that the government's evidence showed the legislature could categorically regulate firearm possession of individuals who could not be trusted to obey the law. However, Judge Gettleman found the government

8

failed to prove that § 922(g)(1) imposes a "comparable burden" on the right to keep and bear arms because the statute is a "<u>permanent</u> prohibition." *Id*. at *8. Judge Gettleman thus found the government failed to prove § 922(g)(1) was constitutional both on its face and as-applied to the defendant. *Id*. at *11.

Recently, on January 22, 2024, Judge Yandle in the Southern District of Illinois joined Judge Gettleman in finding that the government failed to prove that § 922(g)(1) imposes a "comparable burden" on the right to keep and bear arms. *See United States v. Taylor*, 23-CR-40001, Dkt 44 (S.D. Ill. Jan. 22, 2024).

On November 30, 2023, Judge Coleman disagreed with Judge Gettleman that § 922(g)(1) is unconstitutional on its face. *United States v. Griffin*, No. 21-CR-00693, 2023 WL 8281564, at *2 (N.D. Ill. Nov. 30, 2023). However, she recognized that § 922(g)(1) may be unconstitutional as applied to people who have not demonstrated a "risk of violence." *Id*. at *9. In *Griffin*, the defendant had prior convictions for robbery, criminal trespass, and possession of controlled substances. *Id*. Yet, Judge Coleman still found that the government failed to prove the defendant posed a risk of violence. Consequently, the court dismissed the indictment, finding § 922(g)(1) was unconstitutional as-applied to the defendant. Mr. Dixon's involuntary manslaughter conviction, where his friend was ejected during a car crash, and his mob action conviction, where an incident arose in prison, do not show Mr. Dixon has a "risk of violence."

The Seventh Circuit's decision in *Atkison* and the district court decisions cited above show this Court should grant Mr. Dixon's supplemental motion to dismiss Count 2 of the indictment because § 922(g)(1) is unconstitutional on its face and as-applied to him.

9

### III. <u>CONCLUSION</u>

Under *Bruen*'s "standard for applying the Second Amendment," the plain text covers Mr. Dixon's possession of a firearm. Here, the government did not meet its burden of demonstrating that its application of § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation as to Mr. Dixon and on its face.

        Respectfully submitted,

        <u>s/ Dena M. Singer</u>
        Dena M. Singer
        Jonathan S. Bedi
        Bedi & Singer, LLP
        53 West Jackson Blvd
        Chicago, IL 60604
        Phone: (312) 525-2017
        dsinger@bedisinger.com
        jbedi@bedisinger.com
        **Attorneys for Defendant**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney certifies that the foregoing document was filed via the Court's ECF system.

<u>s/Dena M. Singer</u><br>
Attorney for Defendant