IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 22 CR 140 |
| | ) | |
| KEVIN DIXON, | ) | Judge Virginia M. Kendall |
| | ) | |

**OPINION & ORDER**

After shooting an automatic weapon from a car window, engaging in a high speed chase, and finally crashing into another car and running from the scene, Kevin Dixon was charged with possessing a machine gun and possessing a weapon while being a convicted felon. Dixon exercised his right to go to trial and to testify in his own behalf. In April 2024, a federal jury found Dixon guilty on both counts. Dixon now moves for judgment of acquittal, or in the alternative, for a new trial. For the following reasons, the Motion is denied [213].

**LEGAL STANDARD**

I. **Motion for Judgment of Acquittal**

Pursuant to Federal Rule of Criminal Procedure 29, a judgment of acquittal "must be granted when the 'evidence is insufficient to sustain a conviction.'" *United States v. Filer*, 56 F.4th 421, 425 (7th Cir. 2022) (quoting *United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013)). Evidence is sufficient to sustain a conviction when, "viewing the evidence in the light most favorable to the prosecution, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jones*, 713 F.3d at 340) (emphasis in original). The Court "may not 'reweigh evidence or reassess witness credibility and may uphold a conviction

1

based on circumstantial evidence.'" *United States v. Foy*, 50 F.4th 616, 624 (7th Cir. 2022) (quoting *United States v. Medina*, 969 F.3d 819, 821 (7th Cir. 2020)).

Though the defendant bears "a high, 'nearly insurmountable hurdle[,]'" ultimately "the height of the hurdle depends directly on the strength of the government's evidence." *Id.* (first quoting *United States v. Armbruster*, 48 F.4th 527, 531 (7th Cir. 2022); and then quoting *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir. 2019)). In short, the defendant must show that "no rational trier of fact could have found him guilty beyond a reasonable doubt." *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009).

## II. Motion for New Trial

Pursuant to Federal Rule of Criminal Procedure 33, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When deciding if a new trial is warranted based on the weight of the evidence at trial, the Court will decide "whether the verdict is so contrary to the weight of the evidence that a new trial is required in the interests of justice." *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011) (quoting *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999)); *see also United States v. Morales*, 910 F.2d 467, 468 (7th Cir. 1990) ("'If the complete record . . . leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial.'").

In doing so, the Court does not need to view all evidence in the light most favorable to the prosecution, and "may reweigh the evidence, taking into account the credibility of the witnesses." *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999). Although the Court's discretion to grant a new trial is "quite broad," the Court cannot "set aside the verdict simply because it feels some other result would be more reasonable[.]" *United States v. Reed*, 875 F.2d

107, 113 (7th Cir. 1989) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985)); *United States v. Gilliaum*, 372 F.3d 848, 857 (7th Cir. 2004). Instead, the Court "should grant a motion for a new trial only if the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (citations modified).

## DISCUSSION

### I. Motion for Acquittal

In support of his Motion, Dixon raises a host of alleged violations stretching from this Court's pre-trial evidentiary determinations to the behaviors of the prosecution and witnesses at trial. (Dkt. 213). Because a Rule 29 motion addresses whether evidence is insufficient to sustain a conviction, the Court will focus on Dixon's arguments regarding the statutory elements of the jury's findings. In that regard, Dixon argues two main points: (1) the government failed to present sufficient evidence to establish that Dixon knew that the weapon he possessed was a machine gun, and (2) the government failed to present sufficient evidence, with respect to both charges, that Dixon "possessed the gun or was capable of exercising control over the gun." (Dkt. 213 at 14–17).

During trial, Dixon made a Rule 29 motion on the machine gun element, as well as possession elements for both counts. (Trial Tr. Vol. 4, Dkt. 187 at 128:21-24). This Court denied that motion, noting that the government had presented sufficient evidence to show that the weapon was fully automatic, as well as that the defendant was properly linked to the gun. (*Id.* at 131:5-17).

The defendant now seeks a second bite at the apple. But for all the hypothetical evidence that Dixon argues the government did *not* present—such as photographs of Dixon with the gun— he makes no attempt to overcome this Court's prior assessment of what the government did offer. (Dkt. 213 at 14). As noted on the record during trial, DNA, residue, bullets, and eyewitness

3

testimony connected Dixon to the criminal acts. (Dkt. 187 at 131:7-17). Several eyewitnesses, including Isaac Gonzales, the victim of the initial hit-and-run, connected Dixon with the shooting. (Trial Tr. Vol. 2, Dkt. 185 92:5-21, 190:4-194:16, 196:9-12, 197:3-198:9). Witnesses also testified to the "very fast-paced, rapid gunfire" consistent with an automatic weapon. (*Id.* at 151:9-12, 159:12-25). Emergency 911 recordings confirmed those sounds, as did expert testimony confirming that the firearm was set to fire exclusively in automatic mode. (Dkt. 187 at 57:7-21; Trial Tr. Vol. 3-A, Dkt. 186 at 802–05; Gov. Ex. 300 at 07:17–23 (Gonzalez's 911 call capturing the sound of gunfire during the altercation between Dixon and Gonzalez); Gov. Ex. 003 (nine spent shell casings recovered from the scene)). Dixon's testimony regarding his disability and lesser function in his left hand does not amount to a devastating blow to the prosecution's presented evidence. (Dkt. 187 at 160:7-19). Thus, Dixon has not overcome his Rule 29 burden of showing that no reasonable jury could find him guilty on these counts.

## II. New Trial

In support of his Motion for a New Trial, Dixon argues that: (1) the Court erred in granting the government's motion to bar Dixon's claims of outrageous government conduct; (2) the government committed prosecutorial misconduct during its rebuttal argument and over-referenced Dixon's criminal history; (3) the government violated a pretrial ruling of the Court by referring to marijuana as a substance; (4) the government failed to disclose *Brady* materials; (5) the government and the Court erred with respect to Pierce's conclusion regarding gunshot residue; and (6) the Court erred with respect to all objections made pretrial, during trial, and post-trial, including pre-trial motions. He also asserts that evidence against him was "rigged." (Dkt. 213 at 9).

### a. Outrageous Government Conduct

4

Dixon argues that the Court erred in granting the government's pretrial motion to bar him from raising a defense of outrageous government conduct. (Dkt. 213 at 1–2). During the final pretrial conference, defense counsel told the court there would be no defense based on the motivation for the investigation, nor based on alleged outrageous government conduct, thus mooting the government's related motions. (Dkt. 183 at 19). Nonetheless, the government renewed the motion during trial after the defense's questioning seemed to veer into related territory. (Dkt. 187 at 17:1-19:11). On the record, the Court noted that the defense's argument had not yet been improper, but granted the motion as to the potential for future line-crossing. (*Id.*) Defense counsel agreed with the parameters of the Court's analysis. (*Id.*)

Now, Dixon returns with conclusory allegations about the constitutional implications of his inability to argue outrageous government conduct, which his counsel explicitly stated was not a part of their defense. Notwithstanding his lack of evidence on the claim, the Seventh Circuit has repeatedly held "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) (citing *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008). The same is true for "intimations that outrageous governmental misconduct is an independent ground for ordering a new trial." *United States v. Smith*, 792 F.3d 760, 765 (7th Cir. 2015) (quoting *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (citations modified)). Furthermore, the issue of governmental misconduct is a question of law for determination by the court; it is not a jury question. *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987). Thus, the Court did not err in precluding Dixon from raising this issue in trial.

### b. Prosecutorial Misconduct

Dixon next argues that the government engaged in prosecutorial misconduct during its rebuttal closing argument by both misstating the amount of time that Dixon's Dodge Charger was

out of the view of Officer Kulacz's dashcam and by referencing the defendant's incarceration. (Dkt. 213 at 9, 13–14). In evaluating whether prosecutorial misconduct exists, the Court will follow a two-step analysis: (1) whether the prosecutor's comments were improper standing alone, and (2) whether the remarks in the context of the whole record denied the defendant's the right to a fair trial. *United States v. Durham*, 766 F.3d 672, 684 (7th Cir. 2014) (citing *United States v. Bell*, 624 F.3d 803, 811 (7th Cir. 2010). To determine prejudice, courts consider the following six factors:

> (1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the remark; (4) whether the district court provided (and the efficacy of) a curative instruction; (5) whether the defendant had an opportunity to rebut the remark; and (6) the weight of the evidence against the defendant.

*Durham*, 766 F.3d at 685) (citing *United States v. Clark*, 535 F.3d 571, 580–81 (7th Cir.2008)). Additionally, "'as a general matter, improper comments during closing arguments rarely rise to the level of reversible error.'" *United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003) (citation omitted).

The government's comments during closing were already the subject of a mistrial motion. (Trial Tr. Vol. 5, Dkt. 188 at 90:13-93:7). As discussed at trial, the government's reference to the defendant's incarceration was improper. (*Id.*) This Court determined that the error did not rise to the standard for a mistrial, however, because the defendant himself had admitted to some of his prior interactions with the criminal justice system and his convictions had already come up due to the nature of the charges and impeachment evidence.[1] (*Id.*) Instead, the Court proceeded with a curative instruction that the jury was not to consider the prosecutor's reference to Dixon's time at the MCC. (*Id.*)

---

[1] The elements of the felon in possession statute, as well as Dixon's own admissions and related impeachment on cross, explain what Dixon deems as the prosecution's over-reference to his criminal history.

6

Dixon next argues that the government committed prosecutorial misconduct when it referenced a 11-second portion of the pursuit rather than a 21-second portion. (Dkt. 213 at 13). Specifically, during closing, the government highlighted that Dixon's version of events required that during an 11-second period, the dash camera lost sight of the Dodge Charger, Dixon went from going 50 miles per hour to slamming on the breaks, two passengers got out of the car and fled completely out of view, and then defendant took off driving again to where he got in another car accident. (Dkt. 188 at 86:10-87:13). But this reference to 11 seconds comes directly from Dixon's own admission on cross. (Dkt. 187 at 195:2-23). Accordingly, Dixon has not shown that any remark deprived him of a fair trial.

### c. Reference to Marijuana as a Substance

Dixon also contends that the government violated a pretrial ruling by referring to marijuana as a "substance." (Dkt. 213 at 11–12). But as discussed at the pretrial conference, the defense had two options regarding the government's fingerprint evidence, which came off of plastic containers containing cannabis in the defendant's car. (Dkt. 183 at 29:9-33:25). The defense either needed to stipulate or accept that the government would have to prove chain of custody, which would naturally include testimony referencing a substance within the containers. (*Id.*) Though the defense counsel said she would speak with her client about a potential stipulation, the government argues that the defense never agreed to a stipulation and did not object to the references at trial. (Dkt. 221 at 5, 24 n.8).

Prosecutorial improprieties justify granting a new trial only if the misconduct affected the judgment of the jury, thereby undermining the confidence in the verdict. *United States v. Williams*, 81 F.3d 1434, 1438 (7th Cir. 1996). Dixon has not demonstrated any violation of the pretrial motion, let alone one that impacted the judgment of the jury.

### d. *Brady* Materials

Dixon next alleges that the government failed to disclose exculpatory or impeachment evidence in violation of *Brady*. (Dkts. 213 at 15; 227 at 21). To establish a *Brady* violation, a defendant must show "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defendant; and (3) that it is material to an issue at trial." *United States v. Palivos*, 486, F.3d 250, 255 (7th Cir. 2007). Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* Dixon, however, identifies no specific materials withheld by the government and offers no evidence of bad faith or missing discovery, instead vaguely claiming "Brady information is available that LPD preferred to exclude from DOWNLOAD and provision to Kevin." (Dkts. 213 at 15; 227 at 21). Thus, because Dixon has failed to establish these three elements, his claim fails.

### e. Non-Expert Testimony on Gun Shot Residue

Dixon next argues that the government failed to correct allegedly false testimony by witness Officer Pierce concerning gunshot residue. (Dkt. 213 at 12). While testifying on direct, Officer Pierce said "for a subject that has fired a gun, the gun powder residue will be on your hand." (Dkt. 186 at 80:20-24). After elicitation on cross that Pierce was not an expert witness, this Court directed the jury not to consider that they may have heard the witness state "when there's presence of GSR on someone, it means that he shot a gun," subsequently clarifying that the instruction applied to "just this witness." (*Id.* at 103:2-104:11).

Later in the trial, Forensic Examiner Wilson explained that a positive GSR result indicates that an "individual discharged the firearm, came in contact with the pGSR-related item, or was in the environment of the discharged firearm." (*Id.* at 184:2-9). Dixon now argues that the Court

8

violated the Sixth Amendment by not "correct[ing] [] the underlying falsehood," thus letting the government "springboard" into Wilson's testimony. (Dkt. 213 at 12–13).

It takes "truly unusual circumstances" to detour from the standard rule that "errors that are the subject of curative instructions are deemed harmless." *United States v. Bonner*, 302 F.3d 776, 782 (7th Cir. 2002). The events of this trial did not amount to such an exception. The curative instruction explicitly directed the jury to strike Pierce's conclusions about the significance of a gun powder residue test, and there is no reason to believe that it was insufficient to address the problem. Further, Pierce did not state that all people who have gun control residue on their hands are shooters, but rather that all shooters will have gun control residue on their hands. Thus, to the extent any juror would have disregarded this Court's instruction—and Dixon has provided no evidence to support such a suggestion—the opinion could be entirely consistent with Dixon's theory of the case that he was near other people who shot the gun (despite no video evidence of any passengers). Accordingly, Dixon has not shown that this testimony warrants a new trial.

### f. Objections made Pretrial, Trial, and Post-Trial

Finally, Dixon broadly asserts that the Court erred with respect to "all objections made pretrial, during trial, and post-trial[.]" (Dkt. 213 at 18–19). He also baselessly gestures at a "fabricated gunhandle swab" and "buccal gamesmanship," but does not sufficiently back up his allegations of "fake results" and a "rigged analysis." (*Id.* at 6–9).

As the government rightly points out, a sweeping and underdeveloped claim is insufficient to warrant relief. *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("In this circuit, unsupported and undeveloped arguments are waived."); *see also United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir. 1994); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Dixon's "Other Objections" section attempts to preserve every single ruling the Court made

9

without offering any supporting citations or explanation of how the Court allegedly erred. (Dkt. 213 at 18–19). Since the claims lack factual specificity and reference to legal authority, they are waived. *See United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation modified).

## CONCLUSION

For the reasons above, the Court denies Dixon's Motion for a Judgment of Acquittal, or in the Alternative, for a New Trial [213].

_____
Virginia M. Kendall
United States District Judge

Date: October 20, 2025